UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**ACTION FREIGHT SERVICES, LLC,**
a Michigan Limited Liability Company,

              **Plaintiff,**            CASE NUMBER: 07-12553
                                          HONORABLE VICTORIA A. ROBERTS

v.

**RICHARD THORNE, an individual,**
**ACTION WORLDWIDE SERVICES, LLC,**
a California Limited Liability Company,
**CONCERT GROUP LOGISTICS, LLC,**
an Illinois Limited Liability Company,
**FLYER LOGISTICS, a California Limited**
**Liability Company, D/B/A CGL-LAX,**

              **Defendants.**
_____/

## AMENDED ORDER[1]

### I.   INTRODUCTION

      This matter is before the Court on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction. The Court held a hearing on June 19, 2007. The Defendants challenge this Court's personal jurisdiction. "Because personal jurisdiction is a threshold determination linked to any subsequent order issued by the court," the Court must have personal jurisdiction over a party before issuing injunctive relief against

---

[1] This Order supplants the Ex parte Order entered on June 14, 2007, which granted Plaintiff's request for a TRO. Plaintiff failed to post the ordered bond. The Court announced at the hearing that for that reason, the parties were to presume the TRO did not enter.

1

that party. *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 (6th Cir. 2006); *see also Hitchman Coal & Coke Co. v. Mitchell*, 245 U.S. 229, 234-35 (1917). The Court considered the parties' arguments and finds that it lacks personal jurisdiction over Defendants Action Worldwide Services, LLC, Concert Group Logistics, LLC, and Flyer Logistics, LLC. For that reason, the entire case is transferred to the Central District of California, and the Court does not reach the merits of Plaintiff's claim.

## II. BACKGROUND

Action Freight Services, LLC ("Action" or "Plaintiff"), a national freight forwarder and logistics company, filed suit against Richard Thorne ("Thorne"), Concert Group Logistics, LLC ("CGL"), Flyer Logistics, LLC ("Flyer"), and Action Worldwide Services, LLC ("AWS")(collectively, "Defendants"). Action is a Michigan corporation that does business and operates offices throughout the United States, including California, Illinois, Texas, Florida, and Arizona. Thorne is a former executive and vice president of Action.

Action hired Thorne in April, 2006 to operate Action's Los Angeles office. Thorne signed an employment agreement which provided that Thorne would not compete in any activity that competes with Action for one year after the scheduled expiration of his employment agreement in 2011. The agreement also provided that Thorne would not solicit any person – employee, independent contractor, consultant, agent, or otherwise – to leave Action or solicit, bid, or perform work for any customer of Action that had done business with Action in the preceding two years.

Shortly after his employment began, Action expressed dissatisfaction with Thorne's performance. On January 8, 2007, Action advised Thorne that he was in breach of his employment agreement and that Action had "cause" for termination.

Around the same time, Thorne incorporated AWS, a limited liability company, under the laws of California and began negotiating with Action and Flyer to franchise AWS.

On April 17, 2007, Action terminated Thorne for violating the employment agreement. Thorne immediately went to work for Flyer as Operations Manager. On May 6, 2007, several employees and sales agents of Action-Los Angeles left *en masse* to work at Flyer.

Flyer is a California corporation that assists commercial businesses in shipping packages and parcels. Flyer does business as CGL-LAX and is a part of a network of business owners who enter into "independent participant" agreements with CGL. CGL is a transportation company that provides domestic and international transportation services. CGL has one corporate office in Downers Grove, Illinois and operates through a network of transportation business owners who contract with CGL to run their own business using the name "Concert Group Logistics, LLC or CGL." Pursuant to the "independent participant" agreement, CGL performs administrative and support services, as well as financing of receivable and payables for each independent participant. Further, the agreement expressly provides that the independent participant is not CGL's agent, employee, servant, partner, or joint venturer and CGL has no control over the independent participant's business.

Although CGL has "independent participants" throughout the United States, each independent participant operates in an exclusive territory. For example, Flyer operates exclusively in the Los Angeles area. There is also an independent participant operating under CGL in Romulus, Michigan. Flyer and CGL are Action's competitors.

Action claims that it lost over 90 accounts and $172,000 in gross profits when

Thorne began working with Flyer. Action filed a Verified Complaint against Thorne, CGL, Flyer, and AWS alleging that: (1) Thorne breached the covenants of his employment agreement; (2) Thorne, Flyer, CGL, and AWS defamed Action, resulting in lost business and goodwill; and (3) CGL, Flyer, and AWS tortiously interfered with Thorne's employment agreement and Actions' business relations and expectancies. Action seeks a temporary restraining order and an injunction to enforce the employment covenants and to stop Defendants' competition.

### III.   APPLICABLE LAW AND ANALYSIS

When deciding a motion for preliminary injunction, the Court must consider: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff could suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir.1998). No single factor is dispositive. The Court must balance each factor to determine whether they weigh in favor of an injunction. *Id.* Before addressing these factors, however, the Court must consider the issue of personal jurisdiction raised by Defendants.

#### A.   **Personal Jurisdiction**

It is the plaintiff's burden to establish jurisdiction. *Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir. 1980). Courts must look to the law of the forum state to determine whether personal jurisdiction exists. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). Because the Michigan Supreme Court interprets Michigan's long-arm statute to extend personal jurisdiction over a non-resident defendant to "the farthest limits permitted by

due process," Michigan's two-part analysis merges so that the only determination is whether assertion of personal jurisdiction violates the due process clause. *Sifers v. Horen*, 385 Mich. 195, 199 (1971); *Green v. Wilson*, 455 Mich. 342, 350 (1997); *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992).

A plaintiff may assert either general or specific personal jurisdiction. "In a case of general jurisdiction, a defendant's contacts with the forum state are of such a 'continuous and systematic' nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contact with the state." *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1998). In a specific jurisdiction case, "a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum," such as an action in tort or personal judgments. *Wedge Group, Inc.*, 882 F.2d at 1089. According to Flyer and CGL, the facts do not support this Court's exercise of either general or specific personal jurisdiction.[2]

In Michigan, general personal jurisdiction over a corporate defendant is governed by Mich.Comp.Laws § 600.711, which provides:

> The existence of any of the following relationships between a corporation and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise general personal jurisdiction over the corporation and to enable such courts to exercise personal judgments against the corporation.
> (1) Incorporation under the laws of this state.

---

[2]The Court notes that Michigan courts use the term limited personal jurisdiction synonymously with the term "specific" personal jurisdiction. *See Green v. Wilson*, 455 Mich. 342 (1997).

5

> (2) Consent, to the extent authorized by the consent and subject to the limitation provided in section 745.
> (3) The carrying on of a continuous and systematic part of its general business within the state.

Mich.Comp.Laws § 600.711.

In sworn affidavits, Flyer and CGL say they are not incorporated in the State of Michigan and they did not consent to suit in the State of Michigan so as to fall within the purview of § 600.711(2). Further, Flyer contends it does not carry on a "continuous and systematic" portion of its business in Michigan. Instead, it argues that all of its freight activities occur in California. Similarly, CGL claims that all business is conducted through independent entities over which it has no control. It argues that the entity located in Romulus, MI, which Plaintiff contends is CGL's office, is merely one of the independent entities with which CGL contracts; and it is not a "continuous and systematic" portion of CGL's business.

Plaintiff presents no evidence to rebut these claims. Accordingly, the Court is unable to exercise general jurisdiction over Flyer and CGL. And, without any allegations regarding the contacts of AWS, the Court cannot exercise general jurisdiction over AWS.

The exercise of limited jurisdiction over a defendant is governed by Mich.Comp.Laws § 600.715:

> The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:
> (1) The transaction of any business within the state.
> (2) The doing or causing any act to be done, or consequences to

> occur, in the state resulting in an action for tort.
> (3) The ownership, use, or possession of any real or tangible personal property situated within the state.
> (4) Contracting to insure any person, property, or risk located within this state at the time of contracting.
> (5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

Mich.Comp.Laws § 600.715. The Sixth Circuit developed three criteria to determine whether limited jurisdiction may constitutionally be exercised over a non-resident defendant: 1) the defendant must purposefully avail itself of the privilege of acting in Michigan or causing a consequence in Michigan; 2) the cause of action must arise from the defendant's activities here; and 3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with Michigan to make the exercise of jurisdiction over the defendant reasonable. *LAK, Inc. v. Deer Creek Enter.*, 885 F.2d 1293, 1299 (6th Cir. 1989). When the first two elements are met, an inference arises that the third element is satisfied. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996). "Failure to meet any of the three means that personal jurisdiction may not be invoked." *LAK*, 885 F.2d at 1303.

     To establish the purposeful availment prong, Plaintiff must show that Flyer and CGL have sufficient "minimum contacts" with Michigan "such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945)(quoting *Miliken v. Meyer*, 311 U.S. 457, 463 (1940)). The purposeful availment requirement ensures that "'random,' 'fortuitous,' or 'attenuated' contacts do not cause a defendant to be haled into a jurisdiction." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *CompuServe, Inc. v. Patterson*, 89 F.3d at 1263.

Plaintiff contends that limited jurisdiction exists over all Defendants. Specifically, Plaintiff argues that personal jurisdiction exists over Thorne because: (1) he transacted business in Michigan; and/or (2) engaged in acts that have had consequences in Michigan that resulted in a tort. Plaintiff maintains that the Court has personal jurisdiction over Flyer, AWS, and CGL because they engaged in acts that had consequences in Michigan that resulted in tort. Further, Plaintiff alleges that CGL purposefully availed itself to Michigan by having an independent entity connected with CGL in Michigan transact substantial business.

Personal jurisdiction must be independently analyzed and established over each defendant. *Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 904 ( 6th Cir. 2006)(citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Unlike subject matter jurisdiction analysis,"personal jurisdiction analysis focuses on the 'fairness' of forcing a defendant to defend an action in a certain forum." *Id.* The Sixth Circuit notes this distinction can have important consequences. *Id.*

Because the record is devoid of any facts or allegations that AWS is a corporation with contacts in Michigan or engaged in tortious acts that had consequences in Michigan, the Court finds that it cannot exercise personal jurisdiction over AWS.

However, it is clear the Court has personal jurisdiction over Thorne. The Sixth Circuit holds that if a defendant "conducted even the slightest act of business in Michigan," the first statutory criterion for personal jurisdiction under the Michigan long-arm statute is satisfied, CGL maintains that it does not conduct business in Michigan. *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 906 (6th Cir.1988). Plaintiff's cause of

action asserts breach of a non-compete agreement in an employment contract Thorne signed in Michigan with Plaintiff. And, the alleged consequence, harm to Plaintiff's business, has a substantial enough connection with Michigan to make the exercise of jurisdiction over Thorne reasonable.

This outcome is different with respect to Flyer. The Court finds that the alleged consequences are insufficient for the exercise of personal jurisdiction. Plaintiff contends that Flyer tortiously interfered with its business relationship by hiring Thorne and its former employees. A claim of tortious interference requires the intentional doing of a wrongful act. *Tata Consultancy Svcs. v. Systems Int'l Inc.*, 31 F.3d 416, 422 (6th Cir. 1994). Whether Flyer's hiring of Thorne and former Action employees constitutes tortious interference goes to the merits. However, the Court need not decide this question because it is well settled that the mere foreseeability that a consequence might occur in the forum state, by itself, is insufficient for personal jurisdiction under the due process clause. *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 296 (1968). Put differently, the mere fact that it is foreseeable that hiring Thorne and former Action employees in the Los Angeles office would financially injure Plaintiff in Michigan is insufficient to establish personal jurisdiction. Flyer hired Thorne in California.

The client base that Thorne and the other employees took from Plaintiff to Flyer are located and conduct business in California. Thus, while the Court can envision Plaintiff's headquarters in Michigan suffering from the loss of clients in its California office, Flyer's conduct and connection with Michigan is not such that Flyer should have reasonably anticipated being hauled into court here. *Id.* at 297. Further, the "constitutional touchstone" of personal jurisdiction requires that a defendant, *himself*,

create a substantial connection with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). That Flyer hired Thorne falls short of creating the necessary substantial connection, even if, employing Thorne caused injury to Plaintiff.

Flyer does not conduct business in Michigan and did not purposefully avail itself to any privileges in Michigan. Despite Plaintiff's contention that the freight business necessarily implicates transactions in multiple states, Plaintiff neither specifically alleges nor provides proof that Flyer's products enter the state of Michigan. Plaintiff's pure speculation, if adopted by this Court, would offend "traditional notions of fair play and substantial justice."

Similarly, the Court lacks personal jurisdiction over CGL. CGL represents to the Court that one if its Independent Participants operates a business in Romulus, Michigan. In a sworn affidavit, Gerry Post, chief operating officer of CGL, attests that CGL does not directly solicit or sell to companies in the territories where it is represented by Independent Participants. Instead, CGL maintains that it only performs administrative and support services, and finances receivables and payables. CGL enters into an agreement with each independent participant expressly stating that the independent participant is not an agent, employee, servant, partner, or joint venturer of CGL. Even though an independent participant of CGL operates in Michigan, CGL contends it (CGL) did not purposefully avail itself to Michigan. Plaintiff provides no evidence that CGL and CGL-Romulus are the same entities or that CGL exercises control over CGL-Romulus. Based on CGL's proofs and Plaintiff's failure to rebut, this criterion for exercise of personal jurisdiction is not met.

In addition, the Court finds that Flyer and CGL would be denied due process if

this Court exercised jurisdiction over them.  The alleged tortious acts of Flyer and CGL do not arise from activities in Michigan, and the consequences caused by Flyer and CGL do not have a substantial enough connection with Michigan to make the exercise of jurisdiction reasonable.  The Sixth Circuit held that the "arising from" prong of its three-part due process test is satisfied"when the operative facts of the controversy arise from the defendant's contacts with the state." *Intera Corp. v. Henderson*, 428 F.3d 605, 617-618 (6th Cir. 2005).  Plaintiffs present no facts suggesting either Flyer or CGL had contacts with Michigan.  And, the Court finds that CGL – by the nature of its agreements with Independent Participants – did not have substantial contacts with Michigan from which the operative facts of this case arise.

Accordingly, the consequences of Flyer and CGL's acts do not have a substantial enough connection with Michigan to make the exercise of jurisdiction reasonable.  *Id.* at 618 ("the acts of the defendants or consequences by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.").  To determine whether it is reasonable to exercise personal jurisdiction over a non-resident defendant, the court considers: (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy.  *Id.*

California has a strong interest in exercising jurisdiction over the parties.  Flyer is a resident corporation of California; Thorne is a California resident.  Further, Plaintiff alleges that Defendants committed their tortious acts primarily in California.  While Plaintiff has a substantial interest in obtaining relief, it appears that the state of

California has a strong interest in resolving this controversy.

Since the Court lacks personal jurisdiction over Flyer, CGL, and AWS, this case may not continue here against them. The Court does have personal jurisdiction over Thorne and could retain the case against him. If the Court retained the case against Thorne only, Plaintiff would not be able to obtain complete relief. Therefore, the Court believes it is in the interest of justice to transfer the entire case to a district which has personal jurisdiction over all Defendants.

In cases where personal jurisdiction over the defendants is absent, the Court may transfer the case to any such court in which the case could have been brought at the time it was filed if it is in the interests of justice to do so. 28 U.S.C. § 1631; *Roman v. Ashcroft*, 340 F.3d 314, 328-29 (6th Cir. 2003). In considering whether to transfer, the Court must decide: (1) whether there is another district as to which the exercise of jurisdiction would be proper; and (2) whether the transfer is in the interest of justice. *Roman,* 340 F.3d at 328.

This case may be transferred to the Central District of California because all but one of the Defendants are citizens there. The Central District of California is preferable for many reasons: (1) the parties conduct business there; (2)the witnesses as to the corporate operations of Action-Los Angeles and Flyer are in the area; and (3) California, more the Michigan, has a relationship to the suit by virtue of the corporate operations there and the employees that may be affected by the issuance of a temporary restraining order.

Thus, the Court transfers this case to the Central District of California pursuant to section 1631.

**IT IS ORDERED**.

                                                     S/Victoria A. Roberts
                                                   Victoria A. Roberts
                                                   United States District Judge

Dated:  June 22, 2007

> The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on June 22, 2007.
>
> S/Linda Vertriest
> Deputy Clerk